UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MARY ANN GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-108-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Mary Ann Garcia seeks judicial review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings.  Pursuant to the Order transferring the case, the undersigned now files this Report and Recommendation.

On March 22, 2011, Garcia and a vocational expert testified at a hearing before an administrative law judge (ALJ).  The ALJ determined on April 27, 2011, that Garcia was not disabled because she could perform jobs that existed in significant numbers in the national economy. The Appeals Council denied review on May 1, 2012.  Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review.  *See Higginbotham v.*

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration, succeeding former Commissioner Michael J. Astrue.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is automatically substituted as Defendant in this case.

*Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Standard of Review

A plaintiff is disabled and may be entitled to disability insurance benefits and supplemental security income if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448.  Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [her] limitations."   20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 416.920(a)(4), 416.945(a)(1).

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ applied an incorrect legal standard or (2) the ALJ's determination is not supported by substantial evidence.

*Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve."  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

### Factual Background

Garcia claims that she became disabled on August 27, 2009, at age 44 due to insulin dependent diabetes, peripheral neuropathy, high blood pressure, and obesity.  (Tr. 133, 155.) Immediately prior to that date, she worked as a convenience store clerk. (Tr. 156–57.) She testified that she was fired from that job due to excessive absences, which she claims were due to her conditions and other illness. (Tr. 29.)  Garcia has a twelfth-grade education.  (Tr. 156.)  She is 5 feet, 4 inches tall, and her weight has ranged from approximately 265 to 285 pounds during the period that she alleges disability.  (Tr. 27, 155.)

### Discussion

I.      Substantial evidence supports the ALJ's credibility determination.

Garcia asserts that substantial evidence does not support the ALJ's finding that her activities of daily living were inconsistent with her subjective complaints of disabling pain.  She argues that the ALJ did not recognize her testimony that family members assisted her with activities of daily living, that she mostly stayed at home and watched television, and that she needed to elevate her legs when they would swell.

Statements about a claimant's pain or other symptoms "will not alone establish that [she is] disabled[.]" 20 C.F.R. §§ 404.1529(a), 416.929(a).  Symptoms render an individual disabled only to the extent that "alleged functional limitations and restrictions . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* §§ 404.1529(c)(4), 416.929(c)(4).  To the extent that an individual's statements about the intensity, persistence, and limiting effects of pain or other symptoms are inconsistent with objective medical evidence, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  An ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

In this case, the ALJ acknowledged Garcia's testimony that her son and other family members helped her when possible and that she did not attend social activities outside her home. (Tr. 15.)  He also acknowledged her allegations of leg numbness and her complaints of swelling at medical appointments. *Id.*  The ALJ concluded that Garcia's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with his RFC assessment. *Id.*  Later he explained his reasoning as follows:

> I acknowledge that the claimant has some functional loss . . . . I find the claimant's allegations as to her limitations are not fully supported by the record. . . . I note that she does experience diabetic neuropathy and pain in her lower extremities and have made corresponding limitations in her residual functional capacity. . . .  I find the claimant's statements as to her pain are not fully credible as her activities of daily living are inconsistent with her subjective complaints.  She is able to care for herself, prepare light meals, and perform some household chores.

4

(Tr. 15–16.)

Substantial evidence supports the ALJ's finding that Garcia's activities of daily living were inconsistent with her subjective complaints of disabling pain. In a function report submitted in February 2010, Garcia stated that she regularly did housework and laundry, drove her son home from school, made meals daily, and shopped in stores twice per month for three to four hours at a time. (Tr. 145, 147–48, 152.) In forms submitted in July and October of 2010, Garcia indicated that she had experienced no additional limitations and no changes in her daily activities since February 2010. (Tr. 184, 187, 209, 211–12.) In another form submitted in connection with her application for benefits, Garcia stated that she took care of her son, watched television, read, and talked with friends and family daily. (Tr. 192, 195.) She also reported that medication relieved the pain in her legs, back, and hands. (Tr. 200–05.)

Garcia's medical records also support the ALJ's credibility determination. In December 2009, Garcia was noted to be ambulatory after she presented at the emergency room with complaints of a fever, cough, sore throat, and body aches. (Tr. 298–99.) In March 2010, she was again noted to be ambulatory when she presented at the emergency room for a boil on the right side of her chest. (Tr. 422–23.) Finally, in May 2010 state agency physician Bonnie Blacklock, M.D., reviewed Garcia's evidence of record and concluded that she could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand or walk for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push and pull without limitation. (Tr. 358, 364.) Dr. Blacklock also indicated that this RFC accounted for Garcia's alleged restrictions from obesity, neuropathy, and knee pain. (Tr. 362.) Like the ALJ, Dr. Blacklock found that Garcia's allegations of functional limitation were partially supported by her evidence of record. *Id.* Another state

5

agency physician reviewed Garcia's evidence of record in August 2010 and affirmed Dr. Blacklock's assessment.  (Tr. 405.)

In view of the foregoing substantial evidence, the ALJ's credibility determination is entitled to judicial deference.  *Villa*, 895 F.2d at 1024.

II.      The ALJ properly considered the effects of Garcia's obesity.

Garcia argues that the ALJ recognized obesity as one of her severe impairments but did not assess its effect on her ability to work.  Pusuant to Social Security Ruling 02-01p, a claimant's obesity must be considered at each step of the sequential analysis. SSR 02-1p, 2002 WL 628049, at *3–7 (Sept. 12, 2002).

The ALJ discussed Garcia's obesity in his opinion: he found that obesity was one of her severe impairments and stated that he considered Social Security Ruling 02-01p and "the effect of the claimant's obesity as well as pain on her ability to perform work-related tasks in deciding her functional capacity." (Tr. 13–14.)  After noting that Garcia's obesity exacerbated her impairments, he stated that his RFC assessment accounted for her pain and combination of impairments. (Tr. 16.) Accordingly, he limited her to light work that did not require her to stand or walk for more than two hours, sit for more than six hours, climb ladders, or stoop and crouch more than occasionally.  (Tr. 14.)  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). The substantial evidence that supports the ALJ's credibility determination also supports his RFC assessment.

Garcia cites *Walford v. Astrue*, No. 3-09-CV-0629-BD, 2011 WL 2313012 (N.D. Tex. June 10, 2011), in support of her argument. The court in that case found that remand was required because "the ALJ failed to cite SSR 02-1p and, more importantly, failed to apply the regulation properly." *Id.* at *4. However, that case is distinguishable from Garcia's because the ALJ's finding in *Walford* contradicted the RFC assessment of a treating physician who opined that obesity-related problems prevented the claimant from returning to work. *Id.* at *3–5. Here, the ALJ cited Social Security Ruling 02-1p, and Garcia's treating physicians provided no RFC assessment. Moreover, unlike the treating physician in *Walford*, Dr. Dunn released Garcia to return to work on August 13, 2009, after excusing her from work for three days due to a skin abscess that Garcia believed began with an insect bite. (Tr. 382–83.) At that time, Garcia weighed 286 pounds, one of the highest weights recorded in her medical records. (Tr. 382.) The evidence of record shows that Garcia did return to work at that time but was later fired due to excessive absences on August 27, 2009, the date she claims she became disabled. (Tr. 29, 133, 156.)

For the foregoing reasons, Garcia's argument that the ALJ did not consider the effects of her obesity does not require remand. *See Zimmerman v. Astrue*, No. 07-20766, 2008 WL 3471852, at **2–3 (5th Cir. Aug. 13, 2008) (rejecting claimant's argument that the ALJ did not properly consider obesity and obesity-related impairments because ALJ found obesity to be a severe impairment, emphasized the importance of considering claimant's obesity, and accounted for effects of obesity in his RFC assessment).

III.     The ALJ's procedural error at step three does not require reversal.

A claimant is found disabled at step three if she has an impairment that meets or equals an impairment listed in Appendix 1 of the regulations governing Social Security claims (listing).

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Garcia argues that the ALJ did not properly

evaluate her diabetes and diabetic neuropathy at this step.

The ALJ determined that Garcia did not have an impairment or combination of impairments

that met or equaled a listing.  (Tr. 13.)  After describing the applicable legal standards he stated,

"After review of all of the credible evidence, I find that the claimant's impairments do not meet the

requirements of any sections of the Listings of Impairments."  (Tr. 14.)  He did not specify the

particular listings he considered at step three or state any reasons for this conclusion.  Accordingly

he committed procedural error.  *See Audler*, 501 F.3d at 448 (holding that ALJ's failure to "identify

the listed impairment for which [claimant's] symptoms fail to qualify" or to "state any reason for

her adverse determination at step 3" constituted procedural error).

Having determined that the ALJ erred procedurally at step three, the court "must still

determine whether this error was harmless."  *Id.*  Procedural perfection is not required "as long as

the substantial rights of a party have not been affected."  *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362,

1364 (5th Cir. 1988)) (internal quotation marks omitted).  An ALJ's procedural error at step three

affects a claimant's substantial rights when the claimant appears to have met his burden of

demonstrating that he meets or equals a listing.  *See id.* at 449 (holding that ALJ's error affected

claimant's substantive rights because claimant "would appear to have met her burden of

demonstrating that she meets the Listing requirements for § 1.04A").

To meet a listing, an impairment "must meet *all* of the specified medical criteria."  *Sullivan

v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (italics in original).  "An

impairment that manifests only some of those criteria, no matter how severely, does not qualify."

*Id.*  To equal a listing, a claimant "must provide medical findings that support each of the criteria

8

for the equivalent impairment determination." *Selders*, 914 F.2d at 619. Specifically, the symptoms, signs, and laboratory findings of the claimant's impairment must be equal in severity to the symptoms, signs, and laboratory findings of a listed impairment. 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3).

Garcia argues that the ALJ did not consider whether her impairments met or equaled Listing 9.08, which has been deleted from the regulations after the date of the ALJ's decision. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 9.08(A) (March 24, 2011), *amended by* 76 Fed. Reg. 19692-01, 19696 (April 8, 2011) (removing §§ 9.01–08) (effective June 7, 2011 ). On the date of the ALJ's decision, a claimant could meet Listing 9.08 if she had diabetes mellitus with neuropathy "demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station[.]" *Id.* The listings defined persistent disorganization of motor function as "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . which occur singly or in various combination[.]" *Id.* § 11.00(C). The listings further specified that the "assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." *Id.*

The substantial evidence that supports that ALJ's credibility assessment also supports the conclusion that Garcia's neuropathy did not cause significant and persistent disorganization of motor function in two extremities after August 27, 2009, her alleged date of disability onset. Other evidence of record also supports this conclusion.

For example, although Garcia sought treatment for right knee pain and swelling in November 2010, treating physician Dale Dunn, M.D., found that her knee was stable and diagnosed "likely

9

osteoarthritis," not neuropathy. (Tr. 419.) In January 2011, Garcia presented at the emergency room

with complaints of left lower extremity pain, numbness, and tingling. (Tr. 414.) A nurse noted that

Garcia had a history of peripheral neuropathy and that her left foot and ankle exhibited limited range

of motion and weight bearing secondary to pain. (Tr. 414–15.) However, the nurse observed that

Garcia's range of motion returned to normal less than two hours after her arrival at the emergency

room and that she was ambulatory on crutches at discharge. *Id.*

James R. Burleson, M.D., also examined Garcia for her complaints at the emergency room

in January 2011. (Tr. 416–18.) According to Dr. Burleson, Garcia reported no motor loss and

stated that she had not previously experienced similar symptoms. (Tr. 416.) Upon examination, Dr.

Burleson noted moderate tenderness in Garcia's left foot and found that her extremities were

otherwise normal. (Tr. 417.) Dr. Burleson reviewed x-rays of Garcia's left foot and noted calcaneal

spurs, normal alignment, and normal soft tissues. *Id.* Dr. Burleson diagnosed probable tendinitis

and discharged Garcia in good condition. *Id.*

Five days later, Dr. Dunn examined Garcia for complaints of left foot pain that radiated to

her lower leg. (Tr. 411.) Dr. Dunn noted that Garcia was using a medical boot and crutches. *Id.*

Upon examination, Dr. Dunn found tenderness "consistent with plantar fasciitis." *Id.* He diagnosed

Garcia with plantar fasciitis and foot neuropathy. *Id.*

The above-described medical records from January 2011 are the only medical records

indicating that Garcia's neuropathy may have caused her motor loss in one extremity (her left leg)

after her alleged disability onset date of August 27, 2009. Moreover, her medical records prior to

that date indicate that she did not experience significant and persistent disorganization of motor

function. (*See, e.g.*, Tr. 226, 229, 231 (ambulatory with normal extremities and no motor or sensory

defects; there was no "fall risk"); 259–60, 342–43, 353, 356, 428 (full range of motion in

extremities); 323, 331 (ambulatory with intact sensation and normal range of motion in extremities);

435 (normal range of motion in extremities and no motor or sensory deficits); 462 (normal grip

strength and ability to ambulate; equal strength in all extremities).)  In view of the foregoing, the

evidence of record does not establish that Garcia's neuropathy caused "significant and persistent

disorganization of motor function in two extremities," required to meet or equal Listing 9.08(A).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 9.08(A) (March 24, 2011).

Garcia also argues that her diabetes and diabetic neuropathy equaled Listing 9.08(B), which

required "[a]cidosis occurring at least on the average of once every 2 months documented by

appropriate blood chemical tests (pH or pCO2 or bicarbonate levels)" at the time of the ALJ's

decision. *Id.* § 9.08(B).  Garcia argues that blood tests included in her records show that she has

high CO2 levels.  However, only one of the ten blood tests included in her medical records reveal

a CO2 level exceeding the average range, and that test occurred prior to her alleged disability onset

date. (Tr. 317.)  The other nine blood tests included in Garcia's records, only one of which occurred

after her alleged onset date, show CO2 levels at the high end of the average range.  (Tr. 223, 243,

246, 250, 274, 408, 445, 466, 481.)  In addition, Dr. Dunn, Garcia's treating physician, noted that

she had "adequate control of her diabetes with oral medications not requiring much coverage." (Tr.

234.) These records do not establish that Garcia's diabetes and neuropathy equal Listing 9.08(B).

*See Selders*, 914 F.2d at 619–20 (upholding ALJ's finding of non-equivalence and rejecting

claimant's argument that his I.Q. score of 70 was close to the 60–69 range in the Listing of

Impairments).

For the foregoing reasons, Garcia does not "appear to have met her burden of demonstrating

11

that she meets" or equals Listing 9.08. *Audler*, 501 F.3d at 449. Accordingly, the ALJ's procedural error at step three does not affect her substantial rights. *Compare id.* (holding that claimant appeared to meet step three burden where medical records from her treating physician met criteria of a listing and "[n]o medical evidence was introduced to contradict these findings").

## Conclusion

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Garcia's Complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated:       June 6, 2013.

NANCY M. KOENIG
United States Magistrate Judge

12